# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
## (Boston)

| | |
|---|---|
| **In the Matter of:** | Chapter 7 |
| **NANCY ELLEN MCGINN,** | Case No. 19-11794 MSH |
| **Debtor.** | |
| | |
| **WALTER J. ENO,** | Adversary Proceeding No.: 19-01090 MSH |
| **Plaintiff,** | |
| v. | |
| **NANCY E. MCGINN,** | |
| **Defendant.** | |

## PLAINTIFF WALTER J. ENO'S
## <u>REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Plaintiff Walter J. Eno ("Plaintiff"), by and through his attorney, hereby submits the following proposed findings of fact and conclusions of law:

**[PROPOSED] FINDINGS OF FACT.**

**I.    The Incident**

1.    On December 3, 1994, Defendant Nancy E. McGinn ("Defendant") drove over Plaintiff's son, Gregory Eno ("Gregory"), with her automobile, causing Gregory significant personal injuries (hereinafter described as the "Incident").  Joint Pretrial Statement, Statement of Agreed Facts ("SOAF") [Docket No 145, Schedule 1], ¶ 1.

2.    Following the Incident, Gregory was medevaced to the Boston Medical Center. Hi injuries were life-threatening, and he required emergency surgery for a collapsed lung, 6 broken ribs, punctured lungs and a ruptured disc pressuring his spinal cord.  The Incident left Gregory with multiple internal injuries and two steel rods permanently implanted in his back. Eno Testimony.

3.    Bridget Sprague ("Ms. Sprague") was an eye-witness to the Incident.  Ms. Sprague gave a recorded statement to Chris Chesley on May 15, 1995 (the "Sprague Statement"). Ms. Sprague was deposed in this action on August 30, 2021 (the "Sprague Deposition").  SOAF, ¶ 2; Trial Testimony of Bridget Sprague ("Sprague Testimony").

4.    At the time of the Incident, it was still light outside and Ms. Sprague could see everything very clearly.  Sprague Testimony.  Ms. Sprague could not recall the exact time of the incident but was certain that it was not too late (sometime in the afternoon).  This is because she was with her two young children and was on the way to a six-year-old's birthday party at a nearby bowling alley.  Sprague Testimony.

5.    Ms. Sprague was no more than 25-30 feet away from Gregory at the time of the Incident.  Sprague Testimony.

6. Outside of a bar on Main Street in Buzzards Bay, Ms. Sprague witnessed the Incident. As she described, a man (later identified as Gregory Eno) was standing on the curb and tripped to the ground. Sprague Testimony.

7. A car then drove over this man with "all four tires." Sprague Testimony.

8. The car then backed up over the man, again with "all four tires." Sprague Testimony.

9. Then, the driver of the car (later determined to have been Ms. McGinn) exited the car, bent down, almost on one knee, and looked underneath to see what she had done. Sprague Testimony.

10. As Ms. Sprague described, someone at Ms. McGinn's vantage point would have certainly been able to see that she had just run over a person. Sprague Testimony.

11. Ms. McGinn then got back into her car and fled the scene. As she fled the scene, she drove over Gregory a third time, again with "all four ties." Sprague Testimony.

12. Ms. McGinn fled the scene at an accelerated pace, which Ms. Sprague described as "abnormally fast." Sprague Testimony.

13. Ms. McGinn fled the scene without checking if Gregory was okay, without offering Gregory any assistance, and without calling the police. Sprague Testimony; Trial Testimony of Nancy McGinn ("McGinn Testimony"). Ms. McGinn did not go to the police station or the fire station, both of which were very close to the scene of the crime. McGinn Testimony.

14. Ms. McGinn testified that immediately after the Incident, she drove to friend's place in Bourne. She then called her father, who picked her up that night. Ms. McGinn left the

3

car at her friend's place, and the police ultimately took the car and towed it to the police station. Ms. McGinn claimed that she could not recall the name of this friend. McGinn Testimony.

15. As Defendant fled the scene, Ms. Sprague ran after Defendant's car and took note of her license plate. The police interviewed Ms. Sprague that night, and on several other occasions. Ms. Sprague passed along whatever information about the Incident that she could, including (i) the portion of the license plate she could remember, (ii) a description of the car, (iii) a description of the driver, and (iv) a description of the incident itself. Sprague Testimony.

16. In the days that followed the Incident, the police had Ms. Sprague come to a parking lot at the police station and identify the car used in the incident from a lot full of cars. Ms. Sprague identified Defendant's car. Sprague Testimony.

17. The police told Ms. Sprague that the reason she needed to identify Defendant's car was that Defendant falsely claimed to them that her car had been stolen prior to the Incident. This was not true; Defendant ultimately admitted that her car was not stolen and that she was the one driving the car at the time of the Incident. Sprague Testimony; McGinn Testimony.

18. The police also presented Ms. Sprague with a photo array and asked Ms. Sprague to identify the diver of the car. Ms. Sprague identified Defendant. Sprague Testimony.

19. As Ms. McGinn acknowledged at trial, in the moments prior to the Incident, she was at the bar looking for a friend. She pulled over outside the bar, left the car running and ran into the bar for "two minutes" to see if her friend was there. McGinn Testimony.

20. Ms. McGinn's claim – that she was only there for "two minutes" to see if her friend was in the bar – is not credible. It is belied by her inability to even remember the name of this supposed friend she was looking for. McGinn Testimony.

21. At the time of the incident, a man was in the car with Ms. McGinn. Sprague Testimony; McGinn Testimony. Ms. McGinn's claim that she could not remember who this person was is not credible.

## II. The Criminal Case

22. Following the Incident, Criminal charges were brought against Defendant in Barnstable District Court, Case No. 9425-cr-009012 (the "Criminal Case"). SOAF, ¶ 3; Trial Exhibit 1; Trial Exhibit 2.

23. The records of the Criminal Case were not preserved by the Barnstable District Court, so the exact charges that were considered by the prosecution and/or brought against Defendant are unknown. *See* Affidavit of Jennifer D. Joakim dated May 26, 2021, [Docket No. 124.2].

24. Ultimately, on July 13, 1995, Defendant admitted to sufficient facts and was found guilty by the Court (Hon. Joseph J. Reardon) of (i) leaving the scene of a personal injury, G.L.c. 90, § 24 (2)(a ½)(1)[1], (ii) negligent operation of a motor vehicle, G.L.c. 90, § 24 (2)(a), and (iii) failure to notify the Registry of Motor Vehicles of a name/address change, G.L.c. 90, § 26A. SOAF, ¶ 4; Trial Exhibit 1; Trial Exhibit 2.

25. As noted in Defendant's affidavit dated May 26, 2021 [Docket No, 124.1], certain "other charges" filed against her in the Criminal Case were dismissed upon her pleading guilty to

---

[1] G.L.c. 90, § 24 (2)(a ½)(1) provides: "Whoever operates a motor vehicle upon any way or in any place to which the public has right of access, or upon any way or in any place to which members of the public shall have access as invitees or licensees, and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away after **knowingly colliding with or otherwise causing injury to any person** not resulting in the death of any person, shall be punished by imprisonment for not less than six months nor more than two years and by a fine of not less than five hundred dollars nor more than one thousand dollars." (emphasis added).

the three charges described above. Affidavit of Nancy McGinn dated January 3, 2020 [Docket No. 124.1].

26. At the Trial, Ms. McGinn denied that there were "other charges" brought against her. She acknowledged, however, that her lenient sentence was likely based on her plea bargain. McGinn Testimony.

27. Ms. Sprague was called in to testify in what was likely a sentencing hearing in the Criminal Case. Based on this experience, Ms. Sprague came to understand that there would likely be a civil lawsuit commenced within the next five years and that she should be prepared to be called as a witness in such proceeding. Sprague Testimony.

28. Ms. McGinn accepted a plea bargain, pursuant to which she was sentenced to three years' probation, one-year suspended prison sentence, and 1000 hours of community service. Ms. McGinn did not receive any jail/prison time. McGinn Testimony.

29. Ms. McGinn was very happy with the performance of her criminal defense attorney, Attorney William E. Enright, and the lenient sentence she received. McGinn Testimony.

30. After Ms. McGinn was sentenced, Ms. Sprague learned of the minimal punishment that Ms. McGinn received. As she testified at Trial, Ms. Sprague felt "horrible" about this outcome; that "justice wasn't complete." Ms. Sprague stated that she felt "sad" about the result, and that "it made her really question the justice system" because "something more should have been done." Sprague Testimony.

**III.   The Civil Case**

31. On November 7, 1997, Gregory brought a civil lawsuit against Defendant in Plymouth Superior Court, Case No. 97-1423-1/2B (the "Civil Case"). SOAF, ¶ 5; Trial Exhibit

6

3. Attorney Christopher Mathers ("Attorney Mathers") helped Gregory draft the complaint in the Civil Case, but Gregory filed the Civil Case *pro se*. Trial Testimony of Attorney Mathers ("Mathers Testimony").

      32.      In preparing the complaint in the Civil Case, Attorney Mathers reviewed, *inter alia*, (i) a police report from the Criminal Case, and (ii) a statement from Bridget Sprague. Attorney Mathers.

      33.      On July 6, 1998, Attorney James T. Conery, Jr. ("Attorney Conery") entered an appearance for Defendant. SOAF, ¶ 6; Trial Exhibit 3.

      34.      Also on July 6, 1998, Defendant filed an answer and counterclaim against Gregory. SOAF, ¶ 7; Trial Exhibit 3.

      35.      Ms. McGinn admitted that she met Attorney Conery at a coffee shop sometime prior to his entry of an appearance on her behalf in the Civil Case. McGinn Testimony. According to Ms. McGinn, Attorney Conery was still a law student at the time they met. McGinn Testimony.

      36.      Ms. McGinn's claim – that she never authorized Attorney Conery to enter an appearance or file an answer and counterclaim on her behalf – is not credible.

      37.      On November 12, 1998, the Plymouth Superior Court defaulted Defendant for failing to appear at a pretrial conference. SOAF, ¶ 8; Trial Exhibit 3.

      38.      On or about November 22, 1999, Attorney Mathers entered an appearance in the Civil Case on behalf of Gregory. Trial Exhibit 3. Attorney Mathers represented Gregory at an assessment of damages hearing and thereafter aided in his effort to collect from Defendant. Mathers Testimony.

39. On November 30, 1999, the Plymouth Superior Court issued a Judgment by Default Upon Assessment of Damages, (i) ordering a damages award against the Defendant in the amount of $1,350,000, not including interest, and (ii) dismissing Defendant's counterclaim against Gregory for failure to prosecute. SOAF, ¶ 9.

40. On January 5, 2000, the Plymouth Superior Court issued an execution of judgment in the amount of $1,704,018.25 (including interest that had been incurred to date). SOAF, ¶ 10.

41. Over the next 17 years, Defendant changed her address at least seven (7) times. McGinn Testimony; Trial Exhibit 13.

42. Attorney Mathers settled a claim with Defendant's insurer and recovered $20,000 for Gregory from the insurer. Mathers Testimony. However, Defendant <u>never</u> paid Gregory a dime of compensation as ordered by the Plymouth Superior Court. McGinn Testimony.

43. Following the Incident, Gregory lived his remaining years in chronic pain and poverty. Trial Testimony of Walter J. Eno ("Eno Testimony").

44. Gregory died in 2015. SOAF, ¶ 11; Eno Testimony.

## IV. The Reconstructed Civil Case

45. On August 31, 2016, the York County Probate Court in the State of Maine appointed Plaintiff as Gregory's Personal Representative. SOAF, ¶ 12; Eno Testimony.

46. In April 2017, Plaintiff, by chance, found Defendant employed at the Massachusetts Maritime Academy as an administrative assistant. Eno Testimony.

47. On or about November 11, 2018, the Plymouth Superior Court entered an order substituting Plaintiff for Gregory as the named plaintiff in the Civil Action. SOAF, ¶ 13; Eno Testimony.

48. On or about March 28, 2019, the Plymouth Superior Court (i) entered an order approving the attachment of Defendant's wages in the amount of $135,000 and (ii) issued a writ of attachment of wages (the "Writ of Attachment"). SOAF, ¶ 14; Eno Testimony.

49. On April 9, 2019, the Plymouth Superior Court opened a new docket, Case Number 1983-cv-00375, to "reconstruct" Case No. 97-1223 1/2B (the "Reconstructed Civil Case"). SOAF, ¶ 15.

50. On April 11, 2019, in the Reconstructed Civil Case, the Plymouth Superior Court entered an Amended Judgment for Plaintiff and against Defendant in the amount of $4,825,473.75 (the "Amended Judgment"). SOAF, ¶ 16; Eno Testimony.

51. On May 10, 2019, the Plymouth Superior Court entered a Writ of Execution on Money Judgment in the amount of $487,151.35. SOAF, ¶ 17; Eno Testimony.

## V. The Bankruptcy Case and Adversary Proceeding

52. On May 27, 2019, Defendant filed her bankruptcy petition with this Court (the "Petition"), in which she identified Plaintiff's "personal injury claim" as a "disputed" claim in the amount of "$4,000,000.00." SOAF, ¶ 18; McGinn Testimony.

53. On August 1, 2019, Plaintiff initiated this adversary proceeding. SOAF, ¶ 19.

54. On September 9, 2019, the Court (Hon. Melvin S. Hoffman) entered an Order of Discharge, in which the Court noted certain categories of debts that are nondischargeable. SOAF, ¶ 20.

55. By this adversary proceeding, Plaintiff seeks a declaration that Defendant's debt to him—based on the significant personal injury she caused Plaintiff's late-son, Gregory—is nondishargeable because the debt is for Defendant's "willful and malicious injury" (as provided by 11 U.S.C. § 523(a)(6)). SOAF, ¶ 21.

9

## **[PROPOSED] CONCLUSIONS OF LAW.**

1. Defendant's actions on the afternoon of December 3, 1994 were "willful" within the meaning of 11 U.S.C. § 523(a)(6).

2. Defendant's actions on the afternoon of December 3, 1994 were "malicious" within the meaning of 11 U.S.C. § 523(a)(6).

3. Plaintiff has standing to maintain this adversary proceeding as personal representative of the estate of his son, Gregory Eno.

4. Defendant's commission of the crime of "Leaving the Scene of Personal Injury" was "willful" within the meaning of 11 U.S.C. § 523(a)(6) as a matter of law.

5. The debt that Defendant owes Plaintiff is nondishargeable pursuant to 11 U.S.C. § 523(a)(6) because Defendant's conduct in causing personal injury to Plaintiff's late-son, Gregory, was "willful and malicious" within the meaning of 11 U.S.C. § 523(a)(6).

                                          Respectfully submitted,

                                          WALTER J. ENO,

                                          By his Attorney,

October 6, 2021                       /s/    *Nathaniel R.B. Koslof*
                                        Nathaniel R.B. Koslof (BBO No. 691094)
                                        nkoslof@sullivanlaw.com
                                        SULLIVAN & WORCESTER LLP
                                        One Post Office Square
                                        Boston, MA  02109
                                        Tel.: (617) 338-2800
                                        Fax: 617-338-2880

## CERTIFICATE OF SERVICE

I, Nathaniel R.B. Koslof, certify that on October 6, 2021, this document was served on counsel for the Defendant by electronic mail.

*/s/    Nathaniel R.B. Koslof*
Nathaniel R.B. Koslof