**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS**
(Boston)

| | |
|---|---|
| **In the Matter of:**<br><br>**NANCY ELLEN MCGINN,**<br>    Debtor.<br><br>---<br><br>**WALTER J. ENO,**<br>    Plaintiff,<br><br>v.<br><br>**NANCY E. MCGINN,**<br>    Defendant. | **Chapter 7**<br>**Case No. 19-11794 MSH**<br><br><br><br>**Adversary Proceeding No.: 19-01090 MSH** |

**PLAINTIFF WALTER J. ENO'S
POST TRIAL MEMORANDUM OF LAW**

Plaintiff Walter J. Eno ("Plaintiff"), by and through his attorney, hereby submits the following memorandum of law in support of his Proposed Findings of Fact ("PFFs") and Proposed Conclusions of Law ("PCLs") submitted contemporaneously herewith.

**INTRODUCTION**

On December 3, 1994, Defendant Nancy E. McGinn ("Defendant") repeatedly drove her car over Plaintiff's son, Gregory Eno ("Gregory"), outside a bar in Buzzards Bay, causing significant, life-threatening injuries, including a punctured lung and several broken ribs.  By this adversary proceeding, Plaintiff seeks a declaration that the debt owed to him by Defendant on account of this incident is nondishargeable pursuant to 11 U.S.C. § 523(a)(6) ("Section 523(a)(6)") because Defendant's conduct in causing this injury to Gregory was "willful and malicious" as used in Section 523(a)(6).

Having held a trial on this issue on September 22, 2021 (the "Trial"), the Court should render a declaration of nondischargeability because (I) Defendant's commission of the crime of leaving the scene of personal injury, G.L.c. 90, § 24 (2)(a ½)(1), was "willful and malicious" as a matter of law, and (II) Defendant's conduct that caused, exacerbated and followed the injury on which this debt is based was "willful and malicious" as used in Section 523(a)(6) (which conduct included (i) driving over Gregory **three times**, each time with all four tires, (ii) driving over Gregory at least once after looking under her car and appreciating that she had just run over a person with it, (iii) knowingly fleeing the scene of severe personal injury, choosing to leave Gregory for dead on the side of the road, and finally (iv) evading responsibility for her reprehensible conduct for over twenty years). PFF, ¶¶ 7-11, 41-42.

### A. Background

The facts of this case, as supported at the Trial, are presented in detail in *Plaintiff's Proposed Statement of Facts*, filed contemporaneously herewith and incorporated herein by reference. PFF, ¶¶ 1-55.

### B. Legal Standards

A debt may be nondischargeable in bankruptcy court if the debt resulted from the "willful and malicious injury" by the debtor to another person. 11 U.S.C.A. § 523(a)(6). Pursuant to Section 523(a)(6), three elements must be satisfied before a debt can be determined nondischargeable: (1) the debtor's actions need to be willful; (2) the debtor's actions need to be malicious; and (3) the debtor must have caused injury to another entity or to the property of another entity. In re Elias, 494 B.R. 595, 601 (Bankr. D. Mass. 2013) ("The terms 'willful' and 'malicious' are two distinct elements, and each must be proven to establish an exception to discharge.").

Although intentional torts often provide the basis for nondischargeable debts,[1] Section 523(a)(6) is not limited to intentional torts; the statute has been broadly applied to encompass various forms of "willful and malicious" conduct, including injury caused by automobile collisions. See, e.g., Stubbs v. Mode (In re Mode), 231 B.R. 295, 297 (Bankr. E.D. Ark. 1999) (holding that the debtor's conduct—driving over a person in the process of repossessing her car and "knowingly leaving her lying helpless and severely injured" on the side of the road—was "willful and malicious" under Section 523(a)(6), and rejecting the debtor's claim that she did not see the person she drove over); In re Chapman, 228 B.R. 899, 902 (Bankr. N.D. Ohio 1998) (holding that the debtor's conduct—reversing his car into another and causing front-end damage before speeding away from the scene—was "willful and malicious" under Section 523(a)(6)); Contreras v. Dale (In re Dale), 199 B.R. 1014, 1019-20 (Bankr. S.D. Fla. 1995) ("[T]he Debtor's State Court Judgment, which directly resulted from his hit and run drunk driving accident with the Victim, is not dischargeable under 11 U.S.C. § 523(a)(6)").

    i.    Definition of "Willful" under Section 523(a)(6).

"Willful" means deliberate or intentional. Piccicuto v. Dwyer, 39 F.3d 37, 41 (1st Cir. 1994). In Kawaauhau v. Geiger, the United States Supreme Court determined that because "willful" modifies the word "injury," nondischargeability applies to a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. 523 U.S. 57, 57 (1998); see also In re Elias, 494 B.R. at 601 (discussing the Geiger standard).

---

[1] See, e.g., In re Hermosilla, 430 B.R. 13, 26 (Bankr. D. Mass. 2010) (debtor's violent attack of wife was nondischargeable in bankruptcy as debt for debtor's "willful and malicious injury"); Mazurczyk v. O'Neil, 268 B.R. 1, 4 (Bankr. D. Mass. 2001) (debtor's secret tape-recording of his argument with neighbor excepted from discharge as debt for debtor's "willful and malicious injury"); Pettey v. Belanger, 232 B.R. 543, 546–47 (Bankr. D. Mass. 1999) (debtor's liability for sexual assault and battery in Massachusetts "falls squarely within the exception contained in § 523(a)(6)" and is "a classic example of intentional tort").

Although there is a circuit split as to whether "willful" is examined under an objective or subjective standard, the First Circuit has adopted the objective standard. See In re Swasey, 488 B.R. 22, *passim* (Bankr. D. Mass. 2013) (adopting the objective standard and explaining the distinction at length). Under the objective standard, a debtor does not have to act with the intent to injure for an act to be willful. O'Neil, 268 B.R. at 4. Rather, the court will find that a debtor acts willfully within the meaning of Section 523(a)(6) when she would have objectively appreciated the danger her conduct created. In re Swasey, 488 B.R. at 39. In other words, a "debtor who intentionally acts in a manner [she] knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)." Id. (citing McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 19 (Bankr. D. Me. 1998)). The bankruptcy court may consider circumstantial evidence when assessing what the debtor must have known with "substantial certainty" when taking the injury-producing action. Id. at 45.

    ii.    Definition of "Malicious" under Section 523(a)(6).

"Malicious" means an act done in conscious disregard of one's duties. In re Lubanski, 186 B.R. 160, 165 (Bankr. D. Mass. 1995). Malice has both objective and subjective elements. In re Ovalles, 619 B.R. 23, 31 (Bankr. D.P.R. 2020). The debtor must have (i) been objectively wrongful or lacking in just cause or excuse and (ii) inflicted the injury in "conscious disregard of her duties," meaning she was aware that the act was wrongful or lacking in just cause or excuse. Id. (citing In re Whittaker, 564 B.R. 115, 149 (Bankr. D. Mass. 2017)); see O'Neil, 268 B.R. at 4, (quoting Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997) ("An injury to an entity or property may be a malicious injury within [11 U.S.C. § 523(a)(6)] if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-

4

will.")). It is not necessary that the debtor intended to harm the victim in order for an act to be malicious. In re Pereira, 44 B.R. 248, 251 (Bankr. D. Mass. 1984).

Moreover, the standard for malice is met when a person knowingly violates the law. See, e.g., In re Chapman, 228 B.R. at 525; Schmidt v. Schmehl, 57 B.R. 546 (Bankr. N.D. Ohio 1986). As knowledge of the law is assumed, any violation of the law is presumed to be malicious for purposes of Section 523(a)(6). In re Chapman, 228 B.R. at 525; Oregon Ford Inc. v. Clayburn, 67 B.R. 522, 525 (Bankr. N.D. Ohio 1986).

### C. Defendant's Conduct was Both Willful and Malicious Under Section 523(a)(6).

i. Defendant's Conduct was "Willful" Under Section 523(a)(6).

a. Defendant's crime, "leaving the scene of personal injury" under M.G.L.c. 90, § 24 (2)(a ½)(1), was "willful and malicious" as a matter of law.

In Massachusetts, the crime of "leaving the scene of personal injury" has a scienter requirement. In order to be found guilty of this offense, the prosecution must prove that the operator of the vehicle left the scene without stopping and identifying herself "after **knowingly** colliding with or otherwise causing injury to any person. . . ." M.G.L.c. 90, § 24 (2)(a ½)(1) (emphasis added).[2]

In this case, Defendant admitted to sufficient facts and was found guilty of multiple offenses, including "leaving the scene of personal injury" under M.G.L.c. 90, § 24 (2)(a ½)(1). Trial Exhibit 1; Trial Exhibit 2. In pleading guilty to this offense, Defendant admitted, *inter alia*, that she "knowingly" caused injury to Gregory. *Id.* By "knowingly" causing injury to Gregory,

---

[2] M.G.L.c. 90, § 24 (2)(a ½)(1) ("Whoever operates a motor vehicle upon any way or in any place to which the public has right of access, or upon any way or in any place to which members of the public shall have access as invitees or licensees, and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away after **knowingly colliding with or otherwise causing injury to any person** not resulting in the death of any person, shall be punished by imprisonment for not less than six months nor more than two years and by a fine of not less than five hundred dollars nor more than one thousand dollars.") (emphasis added).

5

Defendant's conduct was "willful" as required by Section 523(a)(6) as a matter of law. Defendant's admission that she "knowingly" caused injury to Gregory should inform—if not control—the Court's analysis under Section 523(a)(6) analysis. See, e.g., Hopkins v. Medeiros, 724 N.E.2d 336, 246 (Mass. App. 2000) ("An admission to sufficient facts may be introduced against the defendant in a subsequently litigated civil suit arising out of the same incident on the theory that the proceeding was the functional equivalent of a guilty plea, with the same degree of finality.").

      b. Defendant's conduct that caused, exacerbated and followed the injury on which this debt is based was "willful and malicious" as used in Section 523(a)(6).

Moreover, the evidence adduced at trial supports Defendant's admission that she "knowingly" (and willfully) caused injury to Gregory. As described in Plaintiff's PFFs (and supported by the witness testimony and documentary evidence cited therein), Defendant (i) drove over Gregory with "all four tires", (ii) reversed her car over Gregory (again with "all four tires"), (iii) stepped out of the car, bent down, and looked under the car to see what she had done, (iv) saw that she had driven over a person, causing significant injury, (v) got back into her car, (vi) drove over Gregory a third time, again with "all four tires", and (vii) fled the scene. PFFs, ¶¶ 7-11. Defendant fled the scene "abnormally fast", without checking if Gregory was okay, without offering Gregory any assistance, and without calling the police. PFFs, ¶¶ 12-13. Defendant did not go to the police station or the fire station to report the incident, notwithstanding that both were very close to the scene of the crime. PFFs, ¶ 13.

This conduct plainly qualifies as "willful and malicious" as intended by Section 523(a)(6) and its progeny. After exiting her car and confirming that she had just driven over a person, Defendant "knowingly" drove over Gregory at least one additional time as she fled the scene.

Moreover, Defendant's intentional act of leaving the scene was "substantially certain" to cause, and exacerbate, the serious injuries she inflicted on Gregory. Thus, the element of "willfulness" under Section 523(a)(6) is satisfied. In re Swasey, 488 B.R. at 39.

The Bankruptcy Court in the Northern District of Ohio dealt with a factually similar situation in In re Chapman, 228 B.R. 899 (Bankr. N.D. Ohio 1998), and this decision is illustrative of how Section 523(a)(6) should apply in the context of a motor vehicle collision. In In re Chapman, the debtor stopped his vehicle, placed it into reverse, and collided with the front of the victim's car. 228 B.R. at 902. The force and speed of the impact caused the victim's vehicle to sustain front-end damage, and the victim sustained injuries to her shoulder and neck as a result of the collision. Id. The victim of the accident sought a determination that the debt owed to him by the debtor was nondischargeable under Section 523(a)(6).

In granting the victim's motion for summary judgment, the court held that, *inter alia*, the debt was nondischargeable because the debtor willfully caused injury to the creditor and her property when he reversed into her car and then "peeled out" as he fled the scene. Id. at 909 ("[T]he Court can figure no rational basis as to why the operator of a motor vehicle would quickly, and with much impetus, place a car into reverse and head directly for the car immediately behind them, other than to intentionally cause some damage to the other vehicle, or at least be substantially certain that some type of damage would occur"); see also In re Margulies, 566 B.R. 318, *passim* (Bankr. S.D.N.Y. 2017) (holding that when defendant rolled his car forward, hit victim and still did not apply brakes, and then continued to drive, he "was substantially certain that he would hit [victim]" with his car and injure him, and thus his conduct was willful).

Similarly, the United States Bankruptcy Court for the Eastern District of Arkansas addressed a factually similar situation in Stubbs v. Mode (In re Mode), 231 B.R. 295, 297 (Bankr. E.D. Ark. 1999).  In In re Mode, the Court held that the debtors' conduct—driving over a person in the process of repossessing her car and "knowingly leaving her lying helpless and severely injured" on the side of the road—was "willful and malicious" under Section 523(a)(6). The Court (i) rejected the debtors' claim that they did not see the person they drove over and (ii) found that their decision to flee the scene after the incident, rather than offering assistance, was dispositive evidence of their willfulness.  As the Court explained:

> It is inconceivable that the [debtors] did not see [the victim's] frantic attempts to halt their actions, or that [the debtor] did not feel a thump as she rolled right over [the victim]. [One debtor] looked directly at [the victim] lying prostate and severely injured on the ground; [the other debtor] watched. **The fact that they fled the scene rather than giving assistance compels the conclusion that they acted knowing and willfully**. The [debtors] not only were aware of [the victim's] presence, they willfully caused the injury to her and both of them fully intended to flee the scene with her lying injured on the ground, an act which could have only exacerbated her injuries.

Id. at 295 (emphasis added); see also In re Haugsrud, 77 B.R. 340, 344 (Bankr. D.N.H. 1987) (finding that the defendant's decision to leave the scene of an accident that he caused served as evidence that his conduct was willful and malicious because "he deliberately left [the victim] to suffer further aggravation of her injuries by lack of immediate attention and care even though that may not have been his primary purpose.").

Here too, the evidence is clear that—at least after Defendant exited her car, bent down, and saw that she had just driven over a person (twice)—the decisions that Defendant made from that moment on were undoubtedly intentional.  At that moment in time, Defendant knew that to get back into her car and drive over Gregory a **third** time as she fled the scene (without offering

8

him any assistance) was "substantially certain" to cause Gregory significant personal injury. Because Defendant "objectively appreciate[d] the danger [her] conduct create[d]", she plainly acted willfully within the meaning of § 523(a)(6).  In re Swasey, 488 B.R. at 39 (citing McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 19 (Bankr. D. Me. 1998)).

    ii.    Defendant's Conduct was "Malicious" under Section 523(a)(6)

Defendant's conduct was clearly malicious under Section 523(a)(6).  First, as a result of Defendant's criminal convictions, malice is presumed.  See In re Chapman, 228 B.R. at 525; Schmidt v. Schmehl, 57 B.R. at 547 ("It is well established that all persons are presumed to know the law. Any conduct which violates the provisions of a law must be considered to have been done with knowledge of the fact that the conduct is unlawful. Since the provisions of 11 U.S.C. Section 523(a)(6) only require that the conduct in question be known to be unlawful at the time it occurs, it must be concluded that any act which violates the provisions of a statute is malicious for purposes of dischargeability determinations.").

Moreover, Defendant's conduct was "wrongful and without just cause or excuse."  See O'Neil, 268 B.R. at 4 (quoting Printy v. Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997)).  The fact that Defendant lacked "personal hatred, spite or ill-will" is immaterial.  Id.  As in In re Mode, Defendant drove over a person with her car, then left him "lying, and obviously injured, on the ground."  231 B.R. at 297.  Accordingly, the standard for malice is plainly met.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests an order declaring that the debt owed to him by Defendant is nondishargeable pursuant to 11 U.S.C. § 523(a)(6) because Defendant's conduct in causing this injury to Plaintiff's late-son, Gregory, was "willful and malicious" as used in Section 523(a)(6).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | WALTER J. ENO, |
|  | By his Attorney, |
| October 6, 2021 | /s/     *Nathaniel R.B. Koslof*<br>Nathaniel R.B. Koslof (BBO No. 691094)<br>nkoslof@sullivanlaw.com<br>SULLIVAN & WORCESTER LLP<br>One Post Office Square<br>Boston, MA  02109<br>Tel.: (617) 338-2800<br>Fax: 617-338-2880 |

Case 19-01090   Doc 162   Filed 10/06/21   Entered 10/06/21 15:43:38   Desc Main
Document      Page 11 of 11


## CERTIFICATE OF SERVICE

I, Nathaniel R.B. Koslof, certify that on October 6, 2021, this document was served on counsel for the Defendant by electronic mail.

>*/s/     Nathaniel R.B. Koslof*
>Nathaniel R.B. Koslof