# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>NANCY ELLEN MCGINN,<br><br>                              Debtor<br><br>WALTER J. ENO,<br><br>                              Plaintiff<br><br>v.<br><br>NANCY ELLEN MCGINN,<br><br>                              Defendant | Chapter 7<br>Case No. 19-11794-FJB<br><br><br><br>Adversary Proceeding<br>No. 19-1090 |

## MEMORANDUM OF DECISION

Nancy Ellen McGinn (the "Debtor" or "McGinn") filed a petition for relief under chapter 7 of the Bankruptcy Code on May 27, 2019 and has received a discharge under 11 U.S.C. § 727(b). At the time of her bankruptcy filing, she was indebted to Walter J. Eno (the "Plaintiff" or "Walter") on a personal injury judgment exceeding $4 million, the discharge of which was the clear purpose of her bankruptcy filing. By his complaint in this adversary proceeding, the Plaintiff seeks a determination that this judgment debt is excepted from her discharge by operation of 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury to Gregory Eno ("Gregory"), now deceased. The Plaintiff is Gregory's father and the personal representative of Gregory's probate estate. After a trial, I hold that the judgment is excepted from discharge in part and dischargeable as to the balance.

**1. Findings of Fact**

I hereby find the following facts under Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R. Bankr. P. 7052. At the trial, the Plaintiff offered the testimony of four witnesses, and the court admitted twelve exhibits. The key testimony came from the Debtor and Nancy Sprague, an eyewitness to the events at the heart of this adversary proceeding.

1. In the afternoon of December 3, 1994, on Main Street in Bourne, Massachusetts, the Debtor, then 27 years old, severely injured Gregory Eno, then 41 years old and in good health, by driving her automobile over him three times. Gregory's injuries were life-threatening and required that he be med-evacuated to Boston for emergency surgery. Among his injuries were a collapsed lung, six broken ribs, punctured lungs, and a ruptured disk and attendant pressure on his spinal cord. To address his injuries, two steel rods were permanently implanted in his back. After his discharge from the hospital and a period of rehabilitation, Gregory lived with Walter for several months while he further recovered. His injuries left him with chronic pain that necessitated long-term use of opioid pain relievers.

2. There was conflicting testimony as to what happened. Nancy Sprague, a resident of Sandwich, Massachusetts, and a special education assistant, witnessed the events of that afternoon and testified as to what occurred. I find her testimony credible.

3. On the afternoon in question, Sprague was taking her two young children to a child's birthday party in Wareham, Massachusetts. On her way to the party, she drove through the nearby town of Bourne on Cape Cod. It was a winter afternoon, but there was still daylight at the time of her trip. As she proceeded up Main Street, she saw—from a distance of about 25 or 30 feet—a pedestrian later identified as Gregory standing on a curb in front of a bar. She then saw him fall to the pavement immediately in front of the Debtor's vehicle, which at that time was pulled over on the side of Main Street.

4. As Sprague testified, the Debtor, operating her vehicle, then ran over Gregory with all four tires, stopped, and then backed up over Gregory again with all four tires. Next, the Debtor got out of her car and bent down to look under the car to see what she had hit. After stopping to look, the Debtor got back in her car and "ripped out and left" the scene in an accelerated fashion, running over Gregory a third and final time with all four tires.

5. As Sprague further testified, and the Debtor conceded, the Debtor did not offer assistance to Gregory or call for help, such as an ambulance or police.

6. Sprague added, and I find, that the Debtor had a passenger in the car with her at the time of the accident, but the passenger was gone by the time the Debtor left the scene.

7. Sprague waited for police and medical assistance to arrive. She then spoke to the police and gave them a description of the Debtor, her vehicle, and the vehicle's license plate number.

8. The Debtor testified to a different version of these event. She testified that on the day in question she had agreed to drive to downtown Bourne to pick up a friend whose name she could not remember (the "Unidentified Friend"); and she had also agreed to give a man who was "walking near her house" earlier that day—and whose name she could not remember—a ride to downtown Bourne (the "Unidentified Passenger"). When she reached downtown Bourne, she pulled her car over in front of a bar and looked quickly for the Unidentified Friend in the bar and other nearby stores on Main Street, but never found her.

9. The Debtor further testified that she then reentered her car and, as she was pulling out of her parking space, felt a "bump" and stopped her vehicle. She denies that she backed up again, stating only that she stopped the vehicle. She testified, and I find, that she had not seen Gregory when she ran him over.

10. The Debtor further testified, in response to questioning by the Plaintiff's counsel, that "I did not get out of my vehicle and look under my vehicle and see somebody and get back in and – that –

3

that did not happen, sir." A few questions later, however, she testified that "I got out of the car once I . . . pulled forward and parked I got out of the vehicle." Asked what she did next, she testified: "I looked and saw what happened and I was horrified, and I left, unfortunately, that's what I did." When asked if she "noticed that there was a person on the ground after [she] pulled over and got out of the car," she responded that "I did sir, yes."

11. She admitted that she then "made a bad decision" in leaving the scene of the accident.

12. I found the Debtor to be generally lacking in credibility. Although she testified that she had thought often of the events of December 3, 1994 and of Gregory, she claimed to have no memory of who it was that she went to look for that day, the Unidentified Friend, or of who the Unidentified Passenger was or where he was going. I do not believe that the Debtor could not recall those individuals, even though they were involved in what she claimed was a transformative event in her life. Her inability to recall their identities effectively serves to prevent their testimony from being obtained.

13. The Debtor would have the Court find that she ran over Gregory only once, never backed over him again, and did not run over him again when she left the scene. I disbelieve her testimony and rather credit Sprague's testimony that she ran over Gregory three times, first proceeding forward, second backing up, and third, after ascertaining what she had done, by driving forward over him again to leave the scene.

14. I find that, when she first ran over Gregory and when she then backed up over him again, she did not know Gregory was in the road in front of and under her vehicle, did not intend to injure him, and did not know that, by pulling forward and then backing up, she was certain to run him over and cause him injury.

15. I do find, however, that the Debtor then got out of her vehicle, saw that Gregory was present in the road in front of her vehicle, and ascertained that she had just run him over.

16. I further find that, knowing that Gregory was present in the road in front of her vehicle, the Debtor then panicked and left the scene by driving her vehicle forward again over Gregory a third time. I do not find that, in doing so, she intended to injure him. I do find, however, that her decision to drive over him again was deliberate and that she cannot have driven over him this third time without substantial certainty that she would thereby further injure him, and grievously so.

17. Knowingly running over a person with a motor vehicle is of course objectively wrongful. I find that, in running over Gregory this third time to flee the scene, the Debtor understood the wrongfulness of this action. She testified that she panicked, and I find that she did in fact panic. Nonetheless, I also find that her panic in no way overrode, in the moment, her subjective appreciation and awareness of the wrongfulness of her conduct. She ran over Gregory the third time in conscious disregard of her duty not to.

18. After driving away from the scene, the Debtor next drove the car to a friend's house and left her car there. Her father picked her up at the friend's house. It appears that the police located the car (they had the license plate number from Sprague) and towed it to the police station. The Debtor turned herself in to police the following day.

19. In subsequent criminal proceedings arising from these events, the Debtor was found guilty in state court of leaving the scene of an accident involving personal injury and of the negligent operation of a motor vehicle. Under local procedures, this involved her admitting to sufficient facts for conviction of these crimes. Sprague was called to testify in these proceedings. She relayed essentially the facts stated above to the police and identified the Debtor, who was then present, as the driver on the day of the accident.

20. In November 1997, Gregory filed a civil action against the Debtor in state court. The attorney who drafted the complaint characterized it as a "standard motor vehicle tort complaint" that sounded in negligence. The Debtor defaulted, and after an assessment of damages hearing that the

5

Debtor did not attend, judgment entered by default for Gregory in the principal amount of $1,350,000. An execution issued in January 2000 in the amount of $1,704,018.25.

21. The Plaintiff has not established that any portion of the judgment debt is damages for the Debtor's leaving the scene of an accident involving personal injury. No evidence has been submitted that Gregory sought damages in that action for the Debtor's leaving the scene.

22. In addition, the Plaintiff has not identified any injury that Gregory suffered as a result of the Debtor's leaving the scene, nothing beyond the injuries he had already suffered from her running him over three times. There is evidence that Sprague and others immediately reported the incident to authorities, so the Debtor's flight caused no delay in Gregory's receiving assistance.

23. Much less is there evidence to support a finding that her leaving the scene would *necessarily* have caused Gregory injury.

24. The evidence establishes that the judgment is based on the personal injuries the Debtor inflicted by her running over Gregory three times.  It is damages for these injuries that are quantified in the judgment.

25. The principal amount of the judgment, $1,350,000, is for all the injury the Debtor inflicted on Gregory that day by running him over three times.  I find that each time she ran him over, she injured him. I have no evidence that the injury caused by any one of her passes over him was greater or lesser than any of the others.  I therefore find that the Debtor injured Gregory in equal measure on each pass, and accordingly I find that the injury she inflicted when she ran him over the third time was a third of the total. Accordingly, I further find that a third of the principal amount of the judgment, or $450,000, is the portion of the judgment attributable to the injury she inflicted that third time.

26. Gregory died in 2015. After his death, the Plaintiff, Walter Eno, who is Gregory's father, became in August 2016 the personal representative of Gregory's probate estate.

27. Since judgment had entered in the civil action, neither Gregory nor Walter had known the Debtor's whereabouts. In 2017, Walter succeeded in determining where she was then employed.

28. In the fall of 2019, Walter filed three motions in the civil action: one to substitute himself for Gregory as plaintiff; another to renew the judgment and issue a new writ of execution, whose twenty-year term was about to expire, for an additional twenty years; and a third to attach the Debtor's wages. Each was allowed. On March 28, 2019, the Superior Court issued a writ of attachment of the Debtor's wages in the amount of $135,000. On April 11, 2019, the Superior Court issued an amended judgment, now in favor of Walter Eno and updated to include accrued postjudgment interest at the rate of 12 percent per annum of $3,475,473.75, bringing the total judgment amount to $4,825,473.75. And on May 10, 2019, the Superior Court issued a writ of execution as to the amended judgment in the amount of $487,151.36.[1]

**2. Jurisdiction**

The matter before the Court is a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt. The matter arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (core proceedings include determinations as to the dischargeability of particular debts). This court accordingly has authority to enter final judgment in the matter. 28 U.S.C. § 157(b)(1).

**3. Analysis**

Under the Bankruptcy Code's fresh start policy, the requirements for a discharge are liberally construed in favor of the debtor. *See Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997) (quoting

---

[1] There is no evidence as to why the execution is in an amount that is approximately one-tenth of the amended judgment. Perhaps the clerk, in completing the form, left out a digit, resulting in a diminution of the executable amount by an order of magnitude. Be that as it may, the 2019 execution is in the amount of $487,151.36.

7

*Boroff v. Tully (In re Tully)*), 818 F.2d 106, 110 (1st Cir. 1987)).  All genuine doubts should be resolved in favor of the debtor. *Id.*  Further, a plaintiff bears the burden of production and the burden of proof regarding every element of a § 523(a) claim.  *Id.* at 787.  "The standard of proof of each element of a § 523(a) claim is by a preponderance of the evidence." *Id.*

Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  A simple parsing of this statutory language establishes that the plaintiff must show four things: (i) that the debtor injured another entity or the property of another entity; (ii) that the injury was willful; (iii) that the injury was malicious; and (iv) that the debt in question is for the willful and malicious injury.

In this instance, the Plaintiff seeks a determination of nondischargeability as to the entirety of the judgment debt, apparently contending that in each of the three instances that the Debtor ran over Gregory, the injury was willful and malicious. He also appears to allege that it was further willful and malicious injury for the Debtor to have left the scene of the personal injury.

I begin with the first requirement, that the debtor have injured another entity or the property of another entity.  That requirement is satisfied here by the three instances of the Debtor's having run over Gregory. In each of those instances, she caused bodily injury to Gregory.  This requirement is not satisfied by the Debtor's further act of leaving the scene of an accident involving personal injury. I have found that the Plaintiff has not shown that the latter act resulted in any further injury or exacerbation of existing injury.

The second requirement is that the injury have been willful. "Willful" in subsection (a)(6) requires a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). This is because "willful" modifies "injury" and therefore requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id*. Negligently or even

8

recklessly inflicted injuries are not excepted from the discharge. *Id*. at 64. I have found that each of the three times that she ran her car over Gregory, the Debtor did not intend to injure him. I have further found that the first two times, the Debtor was not substantially certain that her operating her vehicle as she did would lead to the injury in question. The evidence does not support a finding in either of those instances that she knew that any person was in harm's way. However, as to the third instance, I have found that the Debtor drove over Gregory with knowledge that he was there and substantial certainty that her driving forward would result in his being run over again and further injured. I therefore conclude that the requirement of willfulness is satisfied as to the third instance but not the first or second.[2]

---

[2] The Defendant seems to argue that, under the doctrine of issue preclusion and by virtue of the Debtor's having been found guilty of "leaving the scene of personal injury" under MASS. GEN. LAWS ch. 90, § 24 (2)(a ½)(1), I am precluded as a matter of law from finding that any part of the injury she inflicted was not willful. He reasons that the state statute has a *scienter* requirement that is identical to the part of the definition of willfulness that permits its satisfaction by the debtor's commission of an act that she is substantially certain will lead to injury. I disagree for at least two reasons.

First, the preclusive effect of a Massachusetts judgment is determined by Massachusetts law. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (stating that the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."). A Massachusetts judgment can have issue-preclusive effect only if the issue in the prior action and the issue it would preclude in the current action are identical. *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134, 697 N.E.2d 983, 985 (Mass. 1988) (issue preclusion requires, among other things, that "the issue in the prior adjudication was identical to the issue in the current adjudication"). The *scienter* requirement in § 24(2)(a½)(1) ("Whoever operates a motor vehicle upon any way . . . and without stopping and making known his name, residence and the registration number of his motor vehicle, goes away after knowingly colliding with or otherwise causing injury to any person not resulting in the death of any person, shall be punished . . . .") requires that defendant, when leaving the scene, knew only that she had collided with or caused injury to a person. *Commonwealth v. Rijo*, 98 Mass. App. Ct. 871, 873, 160 N.E.3d 660, 663 (2020), *review denied*, 486 Mass. 1114, 165 N.E.3d 160 (2021) (prosecution failed to establish that defendant "knew he caused injury" to person). It is not a requirement that the collision or injury have been committed with intent to injure or substantial certainty that the act resulting in injury would result in injury. The issues are not identical.

Second, even if the issues were identical, a Massachusetts judgment could have issue-preclusive effect only if the issue in question was also essential or necessary to the prior judgment. *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass. at 134 ("the issue decided in the prior adjudication must have been essential to the earlier judgment"). The Debtor's conviction required only a single instance of knowingly colliding with or otherwise causing injury, not more than one. Here there were three instances. If that instance was supplied by the third instance, then it was not necessary to prove the requisite knowledge as to either of the other two instances. So the findings in issue—that the requisite knowledge exists as to both the first and second instances—were not essential to the prior judgment.

The second requirement is that the injury have been malicious. "Malicious" in subsection (a)(6)

> requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997). Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of [the debtor's] duties, meaning that [the debtor] has to have been aware that the act was wrongful or lacking in just cause or excuse.

*Burke v. Neronha (In re Neronha),* 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006). It is not necessary that a debtor specifically intend to harm the creditor for an act to be malicious. *Printy,* 110 F.3d at 859 (specific intent to injure is not necessary to establish malice). I have found that the first two times she ran Gregory over, the Debtor did not realize that there was a person under her vehicle, and therefore that she had no subjective appreciation of the wrongfulness of what she was doing. The third instance is a different matter. I have found, and as a matter of law readily hold, that the deliberate running over of a person with a motor vehicle is objectively wrongful. And I have further found that in this third instance, the Debtor acted with knowledge of the wrongfulness of her conduct, in conscious disregard of her duty. I therefore conclude that the requirement of malice is satisfied as to the third instance but not the first or second.

The fourth requirement is a showing that the debt in question is for the willful and malicious injury. In this instance, the judgment is for all the injury that the Debtor caused to Gregory in her three passes over him. The injury arising from the first two passes was neither willful nor malicious. Only the injury arising from the third was willful and malicious. I have found that the injury arising from this third pass accounts for a third of the principal amount of the judgment. Accordingly, I conclude that the requirements of exception from discharge are satisfied as to a one-third portion of the amended judgment. The interest and costs accrued on the one-third portion of the principal are, no less than the principal, debt for the willful and malicious injury. *Cohen v. de la Cruz*, 523 U.S. 213, 223, 118 S. Ct. 1212, 1219, 140 L. Ed. 2d 341 (1998) ("debt for" money obtained by fraud, within meaning of 11 U.S.C. §

523(a)(2)(A), includes not only the money obtained by fraud but also treble damages, attorney's fees, and costs and "any debt" arising from the fraud).

**4. Conclusion**

For the reasons set forth above, judgment shall enter declaring that the judgment debt of the Debtor to the Plaintiff is excepted from discharge to the extent of one-third of the whole and discharged as to the balance.

Date: February 28, 2022        _____
　　　　　　　　　　　　　　　　Frank J. Bailey
　　　　　　　　　　　　　　　　United States Bankruptcy Judge